ODD FELLOWS BENEFIT ASSOCIATION *v.* JAMES IVY.

[62 South. 423.]

1. INSURANCE. *Mutual benefit insurance. Effect of expulsion.*

Where it is shown by the evidence in an action on a policy in a mutual benefit association that the member whose life was insured had been suspended or expelled from the order before her death, that she made no effort, by appeal or otherwise, to be reinstated, and that when she died she was not in good standing and the law of the order clearly provides that in such case a member shall forfeit his rights of membership in the association and that the payment of a benefit certificate shall thereby be avoided and that the proceedings of the lodge in expelling the member were regular and according to the rules of the order, there could be no recovery and the courts will not interfere with the action of the order in expelling the member or declare such order ineffective.

2. SAME.

The decisions of a mutual benefit order in admitting members, and in desciplining, suspending or expelling them, are of a quasi-judicial nature, with which the courts will not ordinarily interfere, except, in connection with property rights, to ascertain whether the proceeding was pursuant to the rules and laws of the order, and in good faith, and whether there was anything in the proceeding in violation ·of the laws of the land. Especially is this so, where the question is sought to be raised collaterally in an action for the recovery of benefits.

3. MUTUAL BENEFIT INSURANCE. *Forfeiture. Waiver or estoppel.*

While in some cases an insurance company may, by the receipt of premiums or assessments, waive the breach of conditions of the policy and be estopped from alleging such breach as a ground of forfeiture thereof, yet where the member insured in a mutual benefit association was legally suspended, and not in good standing in the lodge and this was known by the beneficiary in the policy and by third parties who made the payments and by the grand secretary and treasurer of the order, there is no such waiver or estoppel on the part of the order as will prevent it from effectively claiming the breach of the contract, consisting of the acts of the member which resulted in her suspension or expulsion from the order, as a ground of forfeiture.

Appeal from the chancery court of Lafayette county. Hon. D. M. Kimbrough, Chancellor.

Suit by James Ivy against the Odd Fellows Benefit Association. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Falkner, Russell & Falkner,* for appellant.

The peremptory instruction for defendants should have been granted.

a. For the reason that each and every witness stated that deceased, Millie Scott, was both "non-financial" and "not in good standing." Complainant called all the witnesses, defendant none. 1. In addition to every witness on this point the lodge minutes show this fact and that deceased flatly refused to even make any apology for her having given away the secrets of the lodge.

b. The lodge had the right to expel a member for giving away the secrets of the order, that lies at the very basis of any secret order.

c. Deceased never sought any appeal; the minutes show that she wanted none; no proof was offered that she ever attempted any appeal.

d. The conditions expressed in the policy were grossly violated by the deceased, to-wit: 1. "Upon condition that said member complies with the laws, rules and regulations now governing the association, or that may hereafter be enacted for its government and is in good standing and financial in the O. F. B. A. and the subordinate lodge or household to which said member belongs at the time of his or her death." 2d. "Provided, that this policy shall not have been surrendered by said member, or cancelled at his request and another policy issued in accordance with the laws of this association."

Every particle of proof of every witness was to the effect that deceased was both "non-financial" and not "in good standing." 3d. "In case said member dies

more than three years after the date of the issuance of this policy, or renewal, the said beneficiary shall be paid whatever amount is paid into or collected by said association from the financial members of the association for the benefit of said member.''

Not even an attempt was made to show that there was, in fact, a single member of the association that was ''financial.'' Nor was any attempt to show that any ''amount'' had in fact been collected.

e. The change in the beneficiaries was in full accordance with the constitution and by-laws of the order. See exhibit —, wherein page 14 thereof, art. II, this requirement was strictly followed. Attention is also called to the reason why new beneficiaries were named, in this application for new beneficiaries.

''The essential difference between a certificate of membership of a beneficiary association and an ordinary life policy is, that in the latter the rights of the beneficiary are fixed by the terms of the policy, while in the former they depend upon the certificate and rights of the member under the constitution and by-laws of the society. All that the beneficiary has during the life of a member, owing to his right of revocation, is a mere expectancy depending on the will and pleasure of the holder of the certificate. This expectancy is not property.'' Elliott on Ins., p. 389, sec. 354.

The beneficiary acquires no vested interest in such a certificate. Elliott on Ins., sec. 355; *Masonic Soc.* v. *Burkhart,* 110 Ind. 189; *Schoneau* v. *Grand Lodge* (Minn.), 88 N. W. 999; Sup. Conc., Roya; *Adelphia* v. *Capella,* 41 Fed. Rep. 1; *Johnson* v. *Van Epps,* 110 Ill. 551; *Delayney* v. *Delayney,* 175 Ill. 187; 51 N. E. 961, affirming 70 Ill. App. 130; *Milner* v. *Bowman,* 119 Ind. 448; 21 N. E. 1094; *Scmitt* v. *Iowa K. of P. Ins. Assoc.,* 82 Iowa, 304, 11 L. R. A. 205, 47 N. W. 1032; *Carpenter* v. *Knapp,* 101 Iowa, 712, 38 L. R. A. 128, 70 N. W. 764; *Woodruff* v. *Tilman,* 112 Mich. 188, 70 N. W. 420; *Ma-*

*sonic Ben. Asso.* v. *Bunch,* 109 Mo. 560, 19 S. W. 25; *Davidson* v. *Sup. Lodge K. of P.,* 22 Mo. App. 263; *Eleeman* v. *Eleeman,* 39 N. Y. St. Repts. 307, 15 N. Y. Supp. 838; *Thomas* v. *Grand Lodge A. O. U. W.,* 12 Wash. 500, 41 Pac. 882. And the following cases show the same rule: *Jory* v. *Sup. Council L. of H.,* 105 Cal. 20, 26 L. R. A. 733, 38 Pac. 524; *Brown* v. *Grand Lodge A. O. U. W.,* 80 Iowa, 287, 45 N. W. 884.

*Hall* v. *Allen,* 75 Miss. 175, holds clearly that if the "intention" of the assured can be ascertained, the courts will uphold his intention even though he is not in possession of the policy and is wholly unable to comply with the requirements of the order as to the change of beneficiary. In *Carson* v. *Bank,* 75 Miss. at page 173: "It is settled that the right of the beneficiary of a benevolent society, like this of the Knights of Pythias is inchoate, imperfect ambulatory until the death of the member holding the endowment certificates; that such right is a mere expectancy, liable to be defeated by a change of appointment legally made."

A policy of the kind at bar is unlike that in an ordinary life insurance company as set forth in: *Jackson Bank* v. *Lula B. Williams,* 77 Miss. 398 and *Grego* v. *Grego,* 78 Miss. 443. In the latter case at page 445 it says: "This is not a policy in a benevolent association whose constitution and laws expressly authorize a member to change the beneficiary at will." *Ward* v. *Odd Fellows,* 90 Miss. 116, holds: That before any applications can be made to the courts for relief because of rules and regulations of an order, first the party must pursue all the remedies of the order for relief. Citing (in appellee's brief) 59 Am. St. Rep. 193 (*Robison* v. *Templar Lodge*).

f. Complainant was not of that "class" of persons who were entitled to take under this policy, he says he was the nephew of deceased. Const. and by-laws, page 4, section 2, reads as follows: "To provide a fund

to be paid to the widow, orphan or legal representative of deceased Odd Fellows and Inmates of the Household of Ruth within the jurisdiction of the district lodge of Mississippi that may be members of the lodges and household under said jurisdiction.''

Complainant must take notice of the constitution and by-laws upon this proposition: *Rose* v. *Wilkins,* 78 Miss. 401. Also citations by court in that opinion.

Complainant, therefore, had no standing in court because not being a person provided for in the constitution and by-laws.

Mississippi decisions upon ''class'' of beneficiaries: *Tutt* v. *Jackson,* 87 Miss. 207, 39 So. 420; *Carson* v. *Bank,* 75 Miss. 167, 22 So. 1, 37 L. R. A. 559, 65 Am. St. 596. (Above annotated in 2 Miss. Dig., secs. 768, 772, 777.) 29 Cyc. 108 contains the following: ''Where the classes of persons to whom benefits may be paid are prescribed by statute or by the society's charter of incorporation, neither the society, nor a member, nor the two combined, can divert the fund from the class prescribed; the society has no power to issue a certificate payable to a person not belonging to one of these classes; and the designation of a person thus ineligible is nugatory. While the society may, through appropriate legislation, restrict the clasess of persons whom, by statute or charter, benefits may be paid, it cannot enlarge them.'' See, also, notes under this quotation. *Schoenfield et al.* v. *Turner,* 7 L. R. A. 189. As to the rules requiring that beneficiaries be of a specific class. 29 Cyc. 111 (b) *et seq.* and notes to same.

A policy of insurance issued to a beneficiary who has no insurable interest in the life of the assured is void. 26 Law Ed. U. S. 924; *Warnock* v. *Davis,* 104 U. S. 775.

These holdings are upon the ground of public policy. Likewise the basic principles upon which all benevolent orders rest is on the main aid in sickness, old age, accident or death to its members, their families and relatives

of a restricted class and the financial features is only incidental.

g.    The constitution and by-laws of the order prevented any person from recovering on the certificate sued on, constitution and by-laws, page 20, section 18, reads as follows: ''A member permitting himself or herself to become nonfinancial, suspended or expelled, forfeits his or her membership in the order and dying, shall not have paid by the order, because of his or her death, a death benefit or any other kind of benefit.''

(A recent holding as to the right of the assured to change the beneficiary in a policy of this class is: *Wherry* v. *Latimer*, 60 So. 563, and on page 565 thereof, is the following: ''It is clear from the record in this case, as well as the adjudications of this court, that Mr. Wherry had the right at any time to change the beneficiary in these certificates, and that no one could complain on account of it. *Carson* v. *Bank*, 75 Miss. 167, 22 So. 1, 37 L. R. A. 559, 67 Am. St. Rep. 596.'')

A member of a fraternal benefit association is not prevented from changing the beneficiary even though the former beneficiary may have paid all assessments and dues under agreement with the assured. *Grand Lodge A. O. U. W.* v. *Denzer*, 129 Ky. 202, 110 S. W. 882; *Grand Lodge A. O. U. W.* v. *McFadden*, 213 Mo. 269, 111 S. W. 1172; *Supreme Council R. A.* v. *Heitzman*, 140 Mo. App. 105, 120 S. W. 628.

Therefore, we respectfully submit that this cause should be reversed and judgment here for defendants.

*C. E. Slough*, for appellee.

The proof in this case is disputed as to a legal and final suspension of the assured or insured, Millie Scott. There is no dispute as to E. H. McKisack, grand secretary and treasurer having in his hands the money for all assessments and dues at the time of the death of the insured, claiming that he was holding the same as a de-

posit in case the insured was reinstated. Millie Scott died with her dues paid but before her appeal was passed upon or a reinstatmenet was made by the subordinate lodge at Oxford.

In an ordinary life insurance policy no change of beneficiary can be made without the consent of the beneficiary. See *Insurance Company* v. *Willoughby*, 54 So. 834 and *Johnson* v. *Bacon*, 92 Miss. 156. To this general rule there is an exception in the case of mutual and benevolent concerns. Mutual Benevolent and Benefit Societies, 29 Cyc. 124. It is the general rule that benevolent or fraternal insurance policies provide and the beneficiary can be changed at the will of the insured without the consent of the beneficiary, but to this general rule there is an exception, that is where there exists a contract relation between the member and the person designated as the beneficiary relative to the proceeds of such benefit certificate, as in this case, and the beneficiary takes an indefeasible right or vested interest in the proceeds of the certificate, as in ordinary life insurance. See Niblack on Mutual Benefit Societies, p. 444; Vance on Insurance, p. 402; 29 Cyc., p. 129 and note 33; *Smith* v. *Benefit Society*, 9 L. R. A. 616; *Martin* v. *Stubbins*, 18 N. E. 657; *Jory* v. *Supreme Counsel*, 26 L. R. A. 733; *Adams* v. *Grand Lodge*, 38 Pac. 914; *Grimbly* v. *Harrold*, 56 Pac. 558; 79 Miss. 569; *Cockrell* v. *Cockrell*, 77 Miss. 398; *Bank* v. *Williams*, 12 L. R. A. (N. S.) 1206.

Our contention in the case at bar is James Ivy, the original beneficiary, having entered into a contract with Millie Scott, the insured member, that he would pay all assessments, dues and fees on the said policy taken out in the Household of Ruth, in consideration that she would make him beneficiary in the policy, that he took a vested interest in the proceeds of the benefit certificate, and that Millie Scott was estopped to change the beneficiary therein without the consent of James Ivy, so long as he continued to pay the assessments and dues therein accord-

ing to his contract. He did carry out his contract in that monthly he paid dues to the lodge and continued so to do until the secretary and treasurer of the subordinate lodge refused to accept them. As to appellee having a vested interest in said insurance policy, see the following authorities: *Savage* v. *Modern Woodmen of America,* 33 L. R. A. (N. S.) 773, 113 Pac. 802; 49 L. R. A., note page 749; *Brett* v. *Warnich,* 102 Am. St. Rep. 639.

The defendants, Geo. Hines, Jim Sanders and Noah Wilburn, beneficiaries in the two policies issued state that they do not claim under the policy, or policies, see testimony of said parties, however, should they desire so to do they would be prohibited because of section 4 of the revised constitution and by-laws of the order which provides that only, husband, wife, father, mother, brother, sister, uncle, aunt, nephew, niece or dependent relative are eligible to receive proceeds of benefit certificates.

In the absence of special circumstances regarding the payment of premiums, the lawful suspension of a member of a lodge works a forfeiture of the benefits arising under the policy. However, there are instances and circumstances whereby the society becomes liable for the benefits arising and agreed upon in the face of the contract of insurance. Where the insurance company or the mutual aid society continues to accept the monthly dues on a certificate, knowing that the insured has been suspended from the lodge, or from some other cause forfeited his right under the policy, it cannot escape liability after the death of the insured, on the ground that the member had forfeited some way or another all of his rights under the policy. *Pringle* v. *Modern Woodmen,* 107 N. W. 756; *Watts* v. *Equitable Mutual Life Ins. Co.,* 82 N. W. 441.

In *Staats* v. *Pioneer Ins. Assn.,* 55 Wash. 51, 104 Pac. 185, it was shown that the insurance company accepted

a premium knowing that there was other insurance on the property and it retained it until after the loss, and the principle relied on was that the premium being accepted and retained with full knowledge of all the circumstances, while the policy was asserted to be in force, the estoppel arose.

In *Coverdale* v. *Royal Arcanum,* 193 Ill. 91, 61 N. E. 915, it was held that a lodge with full knowledge of the fact that a member was engaged in the business of a liquor dealer, the falsity of his statement that he was not so engaged will not prevent an estoppel arising where the lodge continues to receive dues from him and continues to treat his insurance as valid up to his death.

In *Clearing Co.* v. *Altschuler,* 55 Neb. 341, 75 N. W. 862, the facts show that a premium that was past due was paid on August 4th, and on the 6th, a receipt in ordinary form was sent therefor. On the fourteenth, the insured died, and the company, on the eighteenth returned, the premium claiming the insurance had never been in force, but the premium paid had been kept on deposit while awaiting a health certificate. The court says the letter of inclosure stated in plain language it was sent as a payment, and the company receipted for it as a payment. It was said to be merely an afterthought for the company to claim the payment was a deposit. "The company with full knowledge of all the facts, dealt with the assured during his lifetime, on the assumption that his contract of insurance was in force and it cannot, now that he is dead, be heard to assert that he was deluded by its agents into purchasing and paying for a still-born policy." See 29 Cyc. 194, 195, 196; supported by 44 Wis. 376; 91 Wis. 81, 64 N. W. 301; 77 Ind. 203; 40 Am. Rep. 295; 5 Misc. Rep. 245; 25 N. Y. Supp. 469.

In the case of *Morgan* v. *Independent Order, etc.,* 90 Miss., at bottom of page 875, this court speaking through Justice MAYES used the following language, to-wit: "For-

feitures are hateful to the court. This court will never avoid an insurance policy, acted upon in good faith by the insured, where the dues have all been paid and the company is in no way prejudiced by any act of the insured, unless it be in the clearest case of a violation of good faith with the insurance company.''

The court had ample testimony upon which to find that the dues of the insured had been paid and that the grand secretary and treasurer had received and kept same until after the death of the insured and with a knowledge that the subordinate lodge had suspended or attempted to suspend the insured.

It is a principle of equity jurisprudence that equity regards and treats that as done which in good conscience ought to be done. And the valuable right of appellee, James Ivy, which he contracted with his aunt, Millie Scott, namely, to pay her dues, fees and assessments upon the condition that she would make him the beneficiary in the life insurance policy issued by the appellant, Household of Ruth, became a clear and distinct interest and vested right in James Ivy, which the spirit of the maxim quoted secures to him under said agreement.

I respectfully submit that the findings of the chancellor are correct and that the decree should be affirmed.

Argued orally by *Lee M. Russell,* for appellant, and *C. S. Slough,* for appellee.

REED, J., delivered the opinion of the court.

James Ivy filed a bill to recover from the Household of Ruth, the woman's branch of the Odd Fellows' Benefit Association, the amount of a benefit certificate issued upon the life of Millie Scott, who died December 5, 1909. He claims to have had an agreement with Millie Scott, whereby he was to pay her initiation fee and dues as a member of the fraternal order of the Household of Ruth, and to provide for her as long as she should live, and in consideration thereof, she would have her benefit certificate in the order, made payable to him.

In his testimony, when he was asked whether he had an agreement with Millie Scott relative to the policy, he answered as follows: "Yes; I had one. I agreed with her to pay her premiums, initiation fee, and to take care of her as long as she should live if she would make the policy over to me." And when asked if he had paid the assessments on the policy, and for how long, he answered: "Yes, sir. I paid the assessments, one dollar per month, for something like three years. I don't remember the exact date at which I quit paying; but I paid until I received a letter to the effect that she had been suspended from the lodge. After that I did not pay any more assessments." He states in his testimony that he supported her until a few months before her death. It is also shown by his testimony that he had a suit at law with Millie Scott, and that there was trouble between them after the issuance of the benefit certificate and before her death.

It appears that Millie Scott was suspended from the lodge of the order because she "gave away the secrets thereof," and that she did not make any effort to be reinstated. James Ivy knew of this suspension. When asked if he knew that Millie Scott was not a member in good standing of the lodge before she died, he answered: "Yes, sir; I knew that. When I came home I learned that she had been suspended." And he stated that he knew the suspension was for telling the secrets of the lodge, and that he had been told by officers of the lodge that neither he, nor any one else, would get anything under the policy because of her suspension, and that he knew the policy had lapsed. He says that when he learned of the suspension he did not pay any more money, and that he notified the merchant, who was paying the assessments for him, that the lodge would not receive his money.

Millie Scott, before her death, attempted to change the beneficiary in her certificate by surrendering the pol-

icy which contained the name of James Ivy as a bene-
ficiary, and having issued another policy, naming George
Hines and Jim Sanders as beneficiaries.    This last-
named policy is marked "Rejected," and the benefici-
aries therein, George Hines and Jim Sanders, testified
that they did not claim any right to a collection of the
amount named therein.    It appears, however, that the
two last named, after the suspension or expulsion of
Millie Scott, paid to the grand secretary and treasurer
of the association certain amounts, which he testified was
to be held by him to be applied as dues and assessments
in event of the reinstatement of Millie Scott in accord-
ance with the rules and regulations of the order.    It
seems that this reinstatement may be made upon proper
showing within twelve months after the suspension.
There is in the record testimony of two parties, who
called upon the grand secretary and treasurer after the
insured's death, to the effect that he said that Hines and
Sanders had paid Millie Scott's assessments.

The benefit certificate upon which the action is based
provides that the amount should be paid "upon condi-
tion that said member complies with the laws, rules, and
regulations now governing this association, or that may
hereafter be enacted for its government, and is in good
standing and financial in the O. F. B. A. at the time of
his or her death."    The constitution and by-laws of the
association contain a provision that a member who is
suspended or expelled forfeits his membership in the
order, and dying shall not be entitled to have paid to
him the death benefit.    Another rule of the association is
that no benefit shall be paid on any policy or contract,
where a member has been expelled or suspended from
his subordinate lodge.

It is shown by the testimony that Millie Scott had been
suspended or expelled from the order before her death,
that she had made no effort, by appeal or otherwise, to
be reinstated, and that when she died she was not in

good standing. This being so, the law of the order clearly provides that in such case a member shall forfeit his rights of membership in the association, and that the payment of a benefit certificate shall thereby be avoided.

In discussing the law relative to the suspension or expulsion of a member by a mutual benefit association, it is stated in 29 Cyc. 201, as follows: ''The decisions of the order in admitting members, and in discipling, suspending, or expelling them, are of a quasi judicial nature, with which the courts will not ordinarily interfere, except, in connection with property rights, to ascertain whether the proceeding was pursuant to the rules and laws of the order, and in good faith, and whether there was anything in the proceeding in violation of the laws of the land. Especially is this so where the question is sought to be raised collaterally in an action for the recovery of benefits.''

If the proceedings to determine whether members of mutual benefit societies should be expelled or suspended are properly conducted, in accordance with the rules of the order, ordinarily courts will not interfere with the conclusions found. On this subject, we make the following quotation from Bacon on Benefit Societies and Life Insurance (3d Ed.), par. 442, p. 1129: ''If the lodge or expelling tribunal has jurisdiction, if the by-laws defining the offense and punishment are valid, and the proceedings of the lodge, or its tribunal, are regular, the action thus taken is final. Neither courts of law nor those of equity will in such case examine into the merits of the case. The only questions to be considered are: (1) Did the lodge, or its tribunal, have jurisdiction and proceed regularly? (2) Was the by-law establishing the offense and prescribing the punishment valid? If these questions be answered affirmatively, the civil courts will proceed no further.''

There is nothing in the record to show that the proceeding of the lodge whereby Millie Scott was suspended

were irregular, or that they were not according to the rules of the organization. On the other hand, we conclude from all the information before us that the lodge had authority to punish her for betraying the secrets of the order, and that its proceedings in determining her guilt were regular. We do not see that this court now can interfere with the action of the lodge, or declare the same ineffective.

We know that in some cases an insurance company may, by the receipt of premiums or assessments, waive the breach of conditions of the policy and be estopped from alleging such breach as a ground of forfeiture thereof. The chancellor in this case appears to have decided that the grand secretary and treasurer received the payments made by Hines and Sanders as dues or assessments owing the order by Millie Scott. We cannot agree that a consideration of all the testimony in the record establishes this to be so. But in this case, it having been shown that Millie Scott was suspended and not in good standing in the lodge, and that this was known by James Ivy, by the parties who made the payments, and by the grand secretary and treasurer, and that such payments were not made by James Ivy, who is now claiming to be the beneficiary in the certificate, we can not conclude that there is any waiver or estoppel on the part of appellant that will prevent it from effectively claiming the breach of the contract, consisting of the acts by Millie Scott which resulted in her suspension or expulsion from the order, as a ground of forfeiture.

It is stated in Bacon on Benefit Societies and Life Insurance (3d Ed.), par. 431, that "the mere receipt of arrearages, if something more is to be done, will not amount to a waiver of conditions of reinstatement." We conclude that Millie Scott, at the time of her death, was not in good standing, and that the benefit certificate issued to her was thereby forfeited, and that the case shown by the record is not sufficient to estop appellant from setting up the forfeiture.

We believe that the chancellor erred in rendering judgment in this case in favor of the appellee for the amount of the benefit certificate, and the case is therefore reversed, and judgment here dismissing the bill of complaint.

*Reversed.*